UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,            :

           v.                                           **MEMORANDUM & ORDER**
                                                          21-CR-142 (WFK)
HASAN DAVIS,

                Defendant.
-----------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:** On March 17, 2021, the Government filed a single-count Indictment, charging Defendant Hasan Davis ("Defendant") with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On April 27, 2022, Defendant pled guilty to the Indictment's sole count pursuant to a plea agreement. This Court hereby sentences Defendant and sets forth its reasons for his sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2). For the reasons discussed below, Defendant is hereby sentenced to a term of 24 months of incarceration, 2 years of supervised release with special conditions, forfeiture, and a $100.00 mandatory special assessment.

    **I.**    **Discussion**

           a. Background

On March 17, 2021, the Government filed a single-count Indictment, charging Hasan Davis ("Defendant") with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Indict., ECF No. 2. On July 7, 2021, the Honorable Magistrate Judge Robert M. Levy arraigned Defendant on the Indictment, to which he pled not guilty, and ordered Defendant released on a $100,000.00 conditional bond. Minute Entry, ECF No. 5.

Defendant's case was initially assigned to the Honorable Sterling Johnson, Jr., before whom the parties reported Defendant intended to change his plea to guilty on the Indictment's sole count pursuant to a plea agreement. On March 29, 2022, Defendant's case was also assigned to the Honorable Magistrate Judge Roanne L. Mann, who, on April 27, 2022, presided over Defendant's change of plea, with his knowing and voluntary consent. ECF Nos. 21, 22. Magistrate Judge Mann recommended that Defendant's guilty plea be accepted by Judge Johnson. ECF No.

1

22. Defendant's case was subsequently reassigned from Judge Johnson to this Court on October 12, 2022. On November 9, 2022, this Court accepted Defendant's April 27, 2022 guilty plea. ECF No. 32.

This Court hereby sentences Defendant and sets forth its reasons for his sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

    b.  Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. A sentencing court must also consider the Sentencing Guidelines (the "Guidelines" or "USSG") in addition to the seven factors listed in 18 U.S.C. § 3553(a) when making a sentencing decision. However, the Sentencing Guidelines are merely advisory in light of the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220, 264 (2005).

The Guidelines range is the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id* at 49. In this regard, the Guidelines provide "the framework for sentencing" and "anchor… the district court's discretion." *Molina-Martinez v. United States,* 136 S. Ct. 1338, 1346 (2016) (internal reference and quotation marks omitted).

If and when a district court imposes a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and …the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.* "The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range

did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).

This Court has considered the applicable Guidelines range as well as the seven factors listed in Section 3553(a). *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005). It now addresses each in turn.

## II. Analysis

### a. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

#### i. Nature and Circumstances of the Offense

The instant offense occurred on March 14, 2020. *See* Indict. At approximately 4:32 P.M. on this day, New York City Police Department ("NYPD") officers observed Defendant rolling a marijuana cigarette on the sidewalk near the intersection of Sumpter Street and Thomas Boyland Street in Brooklyn, New York. [SEALED] Compl., ECF No. 1, ¶ 2; *see also* Presentence Investigation Report ("PSR"), ECF No. 26, ¶ 4. These officers attempted to stop Defendant, at which time he threw the marijuana cigarette and fled on foot. PSR ¶ 4. Officers then observed Defendant discard a firearm from his waistband before they ultimately apprehended him at 195 Sumpter Street. Compl. ¶ 2. Upon further search of his person, officers found Defendant was in possession of a Glock Inc. Model 22, .40 caliber pistol bearing serial number AARU608. *Id.*; *see also* PSR ¶ 4.

Law enforcement officials determined the firearm was manufactured outside the state of New York and the Government advised these officials the pistol was not stolen. *Id.* The NYPD

3

arrested Defendant and placed him into local custody on weapons charges this same day. *Id.* ¶ 6. However, on March 18, 2020, Defendant was released on a local bond. *Id.*

The United States Attorney's Office for the Eastern District of New York subsequently filed a complaint and application for an arrest warrant on September 19, 2020. *See* Compl. In which, the Government reports Defendant possessed the aforementioned firearm knowing he had previously been convicted of one or more crimes punishable by a term of imprisonment exceeding one year. PSR ¶ 6. Magistrate Judge Lois Bloom granted the Government's request that same day. *See* Compl.

Prior to committing the instant offense, Defendant had been convicted of two prior felonies in New York state court: (1) on March 8, 2006, Defendant was convicted in New York County Supreme Court of Criminal Possession of a Loaded Firearm in the Third Degree, a class D felony; and (2) on July 15, 2008, he was convicted in Kings County Supreme Court of Assault in the Second Degree, a class D felony. PSR ¶ 5. Thus, in light of Defendant's conduct underlying his instant arrest, on March 17, 2021, a federal grand jury returned a single-count Indictment, charging Defendant with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *See* Indict.

Defendant was remanded into federal custody on July 6, 2021, and on July 7, 2021, Magistrate Judge Levy arraigned Defendant on the Indictment and ordered Defendant released on bond. ECF No. 5.

  ii. *Family and Personal Background*

Defendant was born on January 21, 1984 in Brooklyn, New York to the marital union of Dwayne Davis and Charlotte Morrison. PSR ¶ 31. Defendant's parents raised Defendant and his five siblings in Brooklyn until the late 1980s, when they relocated to Maryland to be closer to

4

Defendant's extended family. *Id.* ¶ 33; *see also* Def. Mem., ECF No. 46, at 2. The family remained there until 1997, when Defendant and his siblings returned to New York, specifically the Bedford-Stuyvesant neighborhood of Brooklyn, to live with their mother following their parents' divorce. PSR ¶ 33; *see also* Def. Mem. at 2.

Defendant reports having a limited relationship with his father, who subsequently moved to South Carolina following his divorce from Defendant's mother. PSR ¶ 31. Despite their geographic distance, and his father's alleged physical abuse of Defendant, Defendant reports his father is aware of his instant arrest and is supportive of him. *Id.*; *see also* Def. Mem. at 2 (describing Defendant's father's alleged physical abuse). Defendant also reports having a good relationship with his mother and five siblings, who all reside in the Tri-State area and continue to support him despite his instant arrest. PSR ¶¶ 31-32.

In October 2006, Defendant married Tammy Strickland, with whom Defendant shares his eldest child. *Id.* ¶ 34. Although the couple separated in 2013, Defendant reports Ms. Strickland has remained supportive of him. *Id.* Indeed, Ms. Strickland has described Defendant as an active, reliable, and supportive parent, and she has also expressed concern over her daughter's ability to cope with her father's absence were the Court to sentence Defendant to a custodial term. *Id.* ¶ 35.

Ms. Staraisa Adams, Defendant's current partner and the mother of Defendant's second child, echoes much of Ms. Strickland's sentiments in this regard. *Id.* ¶ 36. She similarly praised Defendant's character, describing him as a good person and financially supportive of both of Ms. Adams, their daughter, and Ms. Adams' two younger siblings who live with the couple. *Id.* ¶ 37.

     *iii. Prior Convictions*

Defendant was arrested and subsequently convicted four times prior to committing the instant offense. PSR ¶¶ 21-24. In November 2005, Defendant was charged in New York County

5

Supreme Court with Criminal Possession of a Loaded Firearm in the 3rd Degree, a Class D felony, for which he was sentenced to a term of imprisonment of 1 year. *Id.* ¶ 21. In February 2007, Defendant received another felony charge, this time in Bergen County, New Jersey, for Credit Card Theft in the 3rd Degree: Fraudulent Use, for which he was sentenced to 2 years of probation. *Id.* ¶ 22.

Defendant received his second Class D felony conviction in September 2007. *Id.* ¶ 23. At this time, Defendant was charged in Kings County Supreme Court with a crime of violence, Assault in the 2nd Degree: Intent to Cause Physical Injury with a Weapon after he was observed shooting into a crowd of people and striking an individual in the back with a bullet. *Id.* For this offense Defendant was sentenced to a term of imprisonment of 5 years. *Id.* Records obtained from the New York State Department of Corrections and Community Supervision ("NYSDOCCS") confirm Defendant was in custody from July 22, 2008, until he received parole on December 16, 2011, and again from February 2, 2015 to November 4, 2015. *Id.*

Defendant was charged for the last time prior to the instant offense in October 2014, in Kings County Criminal Court for Possession of a Forged Instrument in the 3rd Degree, a Class A misdemeanor, for which he was sentenced to a term of 45 days of imprisonment. *Id.* ¶ 24.

    iv.  *Educational and Employment History*

Defendant attended the George Westinghouse High School in Brooklyn. *Id.* ¶ 43. He dropped out partway through his senior year after allegedly feeling overwhelmed. *Id.* While on bond for the instant offense, Defendant began attending classes in audio engineering at the SAE Institute in Manhattan, New York. *Id.* ¶ 44; *see also* Def. Mem. at 4. Defendant recently graduated from the SAE program and obtained his certification in Audio Technology. *See* Exhibit D to Def. Mem., ECF No. 46-4, at 2.

Defense Counsel also reports Defendant was recently hired by Connect the Dotts Management, where Defendant is anticipated to work as an in-studio music producer. *See* Exhibit C to Def. Mem., ECF No. 46-5 (Defendant's letter offer of employment undersigned by Connect the Dotts Management CEO, Ronald Spencer).

Prior to his post-arrest employment, Defendant previously obtained his Occupational Safety and Health Administration ("OSHA") certification in general maintenance in 2012, and his certificate as a personal care aide in March 2020. PSR ¶ 45. Between August 2019 and July 2022, Defendant reports he was unemployed and supported himself with the assistance of family and friends and through "off-the-books" jobs as a freelance construction worker. *Id.* ¶¶ 47-48.

### v. *Medical and Mental Health*

Defendant experiences lingering physical ailments as a result of being shot in the right hip and lower back by an unknown assailant shortly after his instant arrest in 2020. Exhibit C to Def. Mem., ECF No. 46-3; *see also* PSR ¶ 40 (reporting the 2020 shooting was a random occurrence, Defendant does not know the shooter, and he was merely standing with a friend on the street when he was struck twice by the shooter's bullets).

In addition to his physical injuries, Defendant also experiences significant mental health issues, primarily stemming from years of alleged abuse at the hands of his father and as a result of the aforementioned shooting incident. Def. Mem. at 2-3 (describing the extent of Defendant's father's abuse and the circumstances of the 2020 shooting). Indeed, according to a report by Defendant's treating clinical psychologist, Dr. Hersha Diaz, Defendant's life and mental well-being have been and continue to be greatly impacted by these two unfortunate occurrences. *See generally* Exhibit A to Def. Mem., ECF No. 46-1 (providing a detailed account of Defendant's personal and developmental history, which includes a history of his medical and mental health).

Dr. Diaz reports Defendant's experiences while incarcerated, the physical abuse he suffered, and the gun violence and dangerous environment by which he has been surrounded from childhood, through the 2020 shooting, until now, have caused Defendant to suffer symptoms of post-traumatic stress disorder ("PTSD"), including anxiety, panic attacks, and intrusive thoughts.  Exhibit A to Def. Mem. at 6.

> vi.  *Substance Abuse*

Defendant does not report any history of drug or alcohol abuse.  PSR ¶ 42.  However, Defendant has previously admitted to using marijuana, and while Defendant was on supervised release for the instant offense, Probation reported Defendant tested positive for this substance despite being ordered not to use it.  *Id.*; *see also* **[SEALED]** Violation Mem., ECF No. 34.

### b.  The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2).

The parties each address this factor in their sentencing memoranda.  Probation argues Defendant's "instant offense is a serious one[,]" adding "[g]un violence in this country is an escalating issue, and both specific and general deterrence are priorities in this case."  Probation's Recommendation at 2.  The Government agrees and also notes "[Defendant's] criminal record included a number of criminal convictions that—like the instant offense—involve a firearm."

Gov't Mem. at 4. The Government also urges the Court not to overlook the seriousness of firearm offenses which impact a significant number of New Yorkers, including the Defendant himself. *Id.* Moreover, the Government argues: "clearly, the sentences that [Defendant] received for [his firearm] conviction and his other prior convictions have failed to deter him from continuing to violate the law[,]" noting Defendant was on probation at the time he was arrested for 2nd Degree Assault after "he fired a gun into a crowd of people" and also noting he was arrested for a fourth time while on parole from that conviction. *Id.* (referencing PSR ¶¶ 22–24). The Government concludes by stating "[a] significant sentence within the Guidelines range is thus necessary to provide adequate deterrence to future criminal conduct by the defendant. Moreover, general deterrence is similarly important in cases like these, for without a meaningful and substantial penal consequence for the illegal possession of firearms and ammunition, there is limited incentive for individuals to refrain from carrying and using them." *Id.* at 4. Defense counsel, on the other hand, strongly disagrees.

Defense counsel argues Defendant has entirely transformed himself since committing the instant offense. Def. Mem. at 1. Defendant, who himself became a victim of senseless shooting three months after his arrest, has learned first-hand "more about the consequences of gun violence than any jail sentence" could ever teach him. *Id.* Moreover, in the years following his arrest, Defendant has committed himself to his family, his education, and his faith. *Id.* He has, in this sense, taken it upon himself to provide the correctional and rehabilitative treatment he so needed. Defense counsel also argues Defendant is devoted to continuing down this productive and noble path and thus the need for specific deterrence is minimal here. *See generally id.*

      c. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant is charged with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). For this offense, Defendant faces a maximum term of imprisonment of 10 years. 18 U.S.C. § 924(a)(2). Defendant also faces a term of supervised release of not more than three years, 18 U.S.C. § 3583(b)(2); not less than one nor more than five years of probation, 18 U.S.C. § 3561(c)(1); and one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service, 18 U.S.C. § 3563(a)(2). Moreover, Defendant faces a maximum fine of $250,000.00, 18 U.S.C. § 3571(b); and a mandatory special assessment of $100.00 per count, 18 U.S.C. § 3013. As set forth in the Indictment and the Plea Agreement, and pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), as well as the Court's Preliminary Order of Forfeiture, Defendant must also forfeit the Glock Inc. Model 22, .40 caliber pistol bearing serial number AARU608, which law enforcement seized on March 14, 2020 following Defendant's arrest. *See* Indict. at 1 (containing a criminal forfeiture allegation); Preliminary Order of Forfeiture, ECF No. 33.

    d. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for…the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

To determine the recommended Guidelines range of imprisonment, it is necessary to calculate Defendant's offense level and his criminal history score and category.

10

Beginning with his offense level, the applicable Guideline for 18 U.S.C. §§ 922(g)(1) and 924(a)(2) offenses is USSG §2K2.1.  Under this guideline, Defendant is subject to the base offense level provided by USSG §2K2.1(a)(4)(A) since he committed the instant offense subsequent to sustaining one felony conviction for a crime of violence—namely, his September 2007 conviction for Assault in the 2nd Degree.  *See* PSR ¶¶ 10, 23 (detailing the crime of violence charge and conviction).  USSG §2K2.1(a)(4)(A) provides a base offense level of 20 and no enhancements apply.  *Id.* ¶ 10.  However, this figure is reduced by three levels to account for Defendant's acceptance of responsibility for the offense (-2), USSG §3E1.1(a), and because the Government was timely notified of Defendant's intent to enter a plea of guilty (-1), USSG §3E1.1(b).  This results in a total adjusted offense level of 17.

With respect to his criminal history score and category, as a result of Defendant's prior convictions, Defendant has a criminal history score of 4.  *Id.* ¶ 25 (he earns three points as a result of his 2007 felony conviction, *id.* ¶ 23, and one point as a result of his 2014 misdemeanor conviction, *id.* ¶ 24).  According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of four establishes a criminal history category of three (III). *Id.* ¶ 26.

Based upon a total offense level of 17 and a criminal history category of three (III), the Guidelines range of imprisonment is 30 months to 37 months.  *Id.* ¶ 54.

All parties agree with this calculation.  *See* Gov't Mem. at 3, Def. Mem. at 2.  Moreover, Probation and the Government encourage the Court to impose a sentence within the recommended range as neither party finds any mitigating circumstances which would warrant a departure from the Guidelines range.  *See* Probation's Recommendation, ECF No. 26-1, at 1 (recommending a sentence of 30 months of imprisonment and two years of supervised release with special conditions) ("There do not appear to be any mitigating factors in play"); Gov't Mem. at 1

(recommending a sentence of between 30 and 37 months of imprisonment) ("There is nothing unusual or noteworthy in [Defendant's] background that would excuse or justify his crime, and there is overriding interest in punishing firearm offenses, which are a scourge in our communities."). However, defense counsel ardently disagrees. *See generally* Def. Mem.

Defense counsel urges the Court to impose a non-incarceratory sentence of probation. *Id.* at 7. Defense counsel pleads for the Court to consider the extent to which Defendant's childhood trauma and familial abuse contributed to his past criminal behavior, and with this in mind, Defense counsel also urges the Court to recognize the extent to which Defendant has transformed himself into a productive man, devoted to supporting his family and to his faith. *Id.* at 2-4; *see also id.* at 5 ("When asked what he envisions for his future, Mr. Davis responded that he wants to 'be the best parent I can be and to stay on the right track that I've already started down.'"). Indeed, defense counsel urges the Court to recognize the strides Defendant has made towards his rehabilitation, the efforts he has made to distance himself from his past criminal behavior—specifically, his previous possession and use of firearms—the "extensive support network" he has fostered, including his "partner, sisters, mother, and faith community[,]"—many of whom have written thoughtful and heartfelt letters to the Court on their loved one's behalf—combined with "the social support he receives from the Exodus Transitional Community and the social work team at the Federal Defenders." *Id.*; *see* Exhibit B to Def. Mem, ECF No. 46-2 (letters in support of Defendant, submitted by his mother, sisters, and ex-partner, who wrote: "[Defendant] is a great father, and very active in [his daughter Mulan's] life. If he is taken away, it would affect her in a very major way."); *see also* [SEALED] Def. Mem. Supplement, ECF No. 47 (letter in support of Defendant submitted by his Imam and the Executive Director of his mosque). It is with this

support, defense counsel argues, Defendant "has everything he needs to maintain the stability he has achieved." *Id.*

e. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement…issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn to the Court's attention any applicable policy statement. Finding none on its own, the Court proceeds to the sixth § 3553(a) factor.

f. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

On this point, defense counsel argues the imposition of a probationary sentence would not only "allow the Court to re-impose the full range of consequences available [at sentencing], should [Defendant] misstep." Def. Mem. at 6. Defense Counsel also adds "[s]entencing [Defendant] to a period of probation would not yield an outlier from sentencing practice in this district and the Southern District [of New York]." *See id.* (collecting cases in which the sentencing court imposed non-guidelines sentences or otherwise imposed time served on defendants similarly situated to Defendant here).

a. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is not applicable to this case, which concludes the Court's analysis of section 3553.

## II.   Conclusion

A sentence of 24 months of incarceration, 2 years of supervised release with special conditions, forfeiture, and a $100.00 mandatory special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but not greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

**s/WFK**
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated:  October 13, 2023
        Brooklyn, New York